[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case involves petitions filed by the Department of Children and Families (hereinafter the "Department") which seek to terminate the parental rights of Kelly-Ann L. and Nash G., Sr. to their children Nash G., Jr., date of birth and Talia C., date of birth The petitions were filed on 3/15/01. The father of Talia is contesting the termination of his parental rights.
A default trial began on 8/17/01 and was concluded on 8/27/01. The Court finds that Kelly-Ann and Nash, Sr. were duly served, and were represented by court-appointed counsel. The father and mother did not appear for either the judicial pretrial conference held on 7/18/01 or either trial date. Both parents have been whereabouts unknown to the Department and their attorneys. The court has jurisdiction over this matter; there is no pending action affecting custody of these children in any other court; and reasonable efforts have been made to locate the parents and reunify them with their children. CT Page 11655
The Department seeks termination of the parental rights of Nash G., Sr., father of Nash, Jr. on the grounds that the child has been abandoned by his father in the sense that he has failed to maintained a reasonable degree of interest, concern, or responsibility as to the welfare of his child; that the child has been found in a prior proceeding to have been neglected or uncared for and the father has failed to achieve such degree of personal rehabilitation as would encourage the belief that, within an reasonable time, considering the age a needs of the child, he could assume a responsible position in the life of the child; and that there is no ongoing parent-child relationship with respect to the father that ordinarily develops as a result of a parent having met on a continuing, day to day basis the physical, emotion, moral or educational needs of the child and to allow further time for the establishment or re-establishment of the parent-child relationship would be detrimental to the best interests of the child.
The Department seeks to terminate the parental rights of the mother on the grounds that the children have been found in a prior proceeding to have been neglected or uncared for and the mother has failed to achieve such degree of personal rehabilitation as would encourage the belief that, within an reasonable time, considering the age a needs of the children, she could assume a responsible position in the life of the children; and that there is no ongoing parent-child relationship with respect to the mother that ordinarily develops as a result of a parent having met on a continuing, day to day basis the physical, emotion, moral or educational needs of the children and to allow further time for the establishment or re-establishment of the parent-child relationship would be detrimental to the best interests of the children.
This Court, having reviewed the verified petition and other evidence presented at trial, and having heard the testimony of Kimberly Mahon, Department social worker, makes the following factual findings and reasonable inferences supported by those findings:
FINDINGS OF FACT
Talia went into the care of the Department pursuant to an Order of Temporary Custody (hereinafter "OTC") on 12/16/99. Nash, Jr. went into the care of the Department pursuant to an OTC on 5/11/00. They were both committed to the Department on 6/28/00. Specific Steps were ordered by the court on 12/16/99, 12/22/99, 5/11/00 and 6/28/00, to assist the parents with reunification with their children. They include: keep all appointments set by or with the Department; keep whereabouts know to the Department, their attorney and children's attorney; visit children as often as permitted and demonstrate appropriate parent/child interaction CT Page 11656 during visits; participate in counseling and make progress toward the identified treatment goals, i.e., parenting and individual; submit to a substance abuse assessment and follow recommendations regarding treatment and successfully complete any recommended treatment; submit to random drug testing; sign releases authorizing the Department to communicate with service providers; cooperate with court-ordered evaluations or testing; secure and/or maintain adequate housing and legal income; immediately advise the Department of any changes in the composition of the household to ensure that the change does not compromise the health and safety of the children; no substance abuse; no further involvement with the criminal justice system; and cooperate with the Office of Adult Probation or parole officer and comply with conditions of probation or parole.
Ms. L. has not maintained contact with the Department or kept her whereabouts known; she has failed to complete parenting classes in a timely fashion and has failed to demonstrate improvement in her parenting ability; she has failed to attend individual therapy on a regular and consistent basis; she has failed to attend domestic violence counseling on a regular and consistent basis; she has failed to attend anger management classes on a regular and consistent basis; she has been unable to maintain adequate housing; although court-ordered not to have any contact with Mr. G. due to domestic violence, Ms. L. continues to engage in a relationship with him, being recently pregnant with another child by him; and she has been sporadic and inconsistent in her visitation with her children.
Mr. G. has not maintained contact with the Department or kept his whereabouts known; he was incarcerated in April, 2000, thereby continuing to have involvement with the criminal justice system; although offered bi-weekly visits with his son, Mr. G. attended approximately 5 (five) of the scheduled 22 (twenty-two) visits. Mr. G. has not visited his son since October of 2000. Mr. G. failed to engage in substance abuse treatment, individual therapy, parenting classes and domestic violence counseling. He did complete his anger management classes that were required by the criminal court. He has been unable to maintain adequate housing; he has continued to have involvement with Ms. L. in spite of a court order not to; and he has not attended any Administrative Case Reviews held by the Department regarding the treatment plan for his child.
ADJUDICATION
Nash G., Sr.
The Court finds by clear and convincing evidence, that Nash, Jr. has CT Page 11657 been abandoned by his father. Since 5/11/00, when Nash, Jr. was placed in the care of the Department, his father has visited him sporadically, despite the fact that he could have visited him on a weekly basis. He has never sent cards or gifts or made phone calls to his son. He has not maintained contact with the Department to inquire about his welfare or ask how he could contact his child. He has never paid child support on behalf of the Nash, Jr. The only time the Department has known of his whereabouts is when he was incarcerated.
The Court finds that the petitioner has established by clear and convincing evidence, that father of Nash, Jr. has failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of this child, he could assume a responsible position in the life of his child. C.G.S. Sec. 17a-112 (c). The father was offered numerous services to assist him with reunification with his son. Father has done virtually nothing since his child's removal. On 11/30/00, Mr. G. indicated to the Department social worker that he was not willing to cooperate with the Department or with the recommended services that he needed to engage in to facilitate his son's return to his care.
The Court finds by clear and convincing evidence, that as of 3/15/00, the date of the filing of the petition, there was no ongoing parent-child relationship between the Nash, Jr. and his father. Nash, Jr. does not recognize Mr. G. as his father and did not play with or seek comfort from or go to him to have his needs met. Nash, Jr. has no present memories of Mr. G. since he has only seen him 5 (five) since his removal in May of 2000.
Kelly-Ann L.
With respect to the grounds alleged for termination of parental rights, the Court finds that the petitioner has established by clear and convincing evidence, that mother has failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of these children, she could assume a responsible position in their lives. C.G.S. Sec. 17a-112
(c). The mother was offered numerous services to assist her with reunification with her children. Mother has simply not been able to maintain a satisfactory level of commitment and participation in services necessary to bring herself into a position in which she could provide adequate care for these children. She has minimized the seriousness of the substance abuse issues, mental health issues and domestic violence issues. She has had a pattern of attending services initially, and then being discharged for lack of compliance, poor attendance and poor participation. CT Page 11658
The Court finds by clear and convincing evidence, that as of 3/15/00, there was no ongoing parent-child relationship between the either child and their mother. Neither Nash, Jr. nor Talia plays with their mother or seeks comfort or affection from her. Nor do they seem to recognize Ms. L. as their mother. During visits between the mother and her children, the mother evidences little interest in her children, shows no warmth or affection for the children and no capacity to develop a parental relationship with them.
REQUIRED FINDINGS
The court makes the following factual findings based upon the clear and convincing evidence required by C.G.S. Sec. 17a-112 (e):
(1) Appropriate and timely services were provided by the Department to father and mother. Throughout the years from the first Department involvement in December, 1999 through the present, both father and mother have been informed by the Court and the Department that they need to enhance their parenting skills, secure adequate housing and income, and participate in appropriate counseling and treatment to address some serious concerns in their lives which interfere with their ability to provide safe, adequate care for their children. These were appropriate services under the circumstances of this case.
(2) The court finds by clear and convincing evidence that the Department made reasonable efforts to reunify these children with their parents pursuant to the Federal Adoption Assistance and Child Welfare Act of 1980. Mother has made minimal efforts to avail herself of services offered to assist her in reuniting with Nash, Jr. and Talia; and has made minimal efforts to maintain contact with her children or the Department. Father of Nash, Jr. has failed to follow through with virtually all efforts at reunification.
(3) The Department set reasonable and realistic goals embodied in several sets of Specific Steps. Father of Nash, Jr. and mother were unable to successfully comply with or benefit from services offered. They failed to complete parenting classes in a timely manner and have failed to demonstrate improvement in their parenting ability. They failed to successfully participate in individual therapy on a regular and consistent basis to address mental health and anger management issues. They failed to attend substance abuse treatment on a regular and consistent basis and has failed to follow recommendations of substance abuse evaluations. To the Department's knowledge, father and mother have been unable to maintain adequate housing. CT Page 11659
(4) Regarding the children's emotional ties to their parents, both children appear to have a minimal connection or bond their mother and father. Nash is 15 (fifteen) months old and Mr. G. has not seen him since October of 2000. The children do not appear to recognize Mr. G. or Ms. L. as their parent in that they would not seek comfort from or go to them to have their needs met. Nash, Jr. and Talia are in foster care together and are bonded to their foster parents. They seek comfort from them and go to them to have their needs met. Talia and Nash, Jr. are bonded to one another and to the extended family members in their foster home.
(5) Nash, Jr. is now 15 (fifteen) months old and has been out of the care of his parents all of his life. Talia will be 2 (two) years old and has been out of her parents care since December, 1999, half of her life. They are in need of permanency and to allow further time for the establishment or re-establishment of a parent-child relationship with Kelly-Ann L. and Nash G., Sr. would be detrimental to the best interests of these children.
(6) Regarding efforts of Nash, Jr.'s father and both children's mother to adjust their circumstances, conduct or conditions to make it is the best interests of the children to return to their homes in the foreseeable future and (A) the extent to which the parents have maintained contact with the children as part of an effort to reunite the children with them, and (B) the maintenance of regular contact or communications with the guardian or other custodian of the children:
Mr. G. has not contacted the Department to inquire about the welfare of his son, and has not informed them of his whereabouts. He has not involved himself in services which would assist him in becoming a parent to his child. He only visited Nash, Jr. 5 (five) times since his placement and has not seen him since October of 2000.
Ms. L. has not maintained contact with the Department nor kept them informed of her whereabouts. She has not visited her children since March of 2001. She has not successfully involved herself in services which would assist her in becoming a parent to her children.
(7) No inappropriate conduct is noted on the part of anyone which would have prevented the father or mother from having a meaningful relationship with their children. The Department took reasonable steps to encourage the mother and father to do what was necessary to be able to become involved in the lives of their children. There was no evidence that economic circumstances prevented these parents from having a meaningful relationship with the children.
DISPOSITION
CT Page 11660
Nash, Jr. and Talia require stability which these parents are unable now, or within a reasonable period of time, to provide for them.
It is, therefore, in the best interest of Nash G., Jr. and Talia C. that a termination of parental rights enter with respect to their mother Kelly-Ann L., and the father of Nash, Jr., Nash G., Sr., and accordingly, a termination of their parental rights is ORDERED. Pedro C., father of Talia, remains as her sole parent and a trial will go forward regarding his parental rights.
Patricia Lilly Harleston, Judge